Revised July 21, 1999

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 98-30484**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee/Cross-Appellant,**

**versus**

**PAUL RICHARD GREEN,**

**Defendant-Appellant/Cross-Appellee.**

_____

**Appeals from the United States District Court
for the Western District of Louisiana**
_____

**June 30, 1999**

Before JONES, DUHÉ, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Paul Richard Green having been convicted for, while a policeman, harboring a fugitive and a concomitant drug trafficking conspiracy involving that fugitive, the principal issue is presented by the Government's cross-appeal: error _vel non_ in the sentencing court concluding that the jury's general guilty verdict for the conspiracy count (charging cocaine _and_ preludes distribution) was "ambiguous" _ipso facto_ and that, therefore, Green's sentence could not exceed the five-year statutory maximum for a conspiracy involving only preludes (statutory _mandatory minimum_ for the cocaine charge is _ten years_). Green contests the

sufficiency of the evidence and the admission of co-conspirator statements and rebuttal reputation testimony. We **AFFIRM** the convictions, but **VACATE** the sentence and **REMAND** for resentencing.

I.

Green, a Lafayette, Louisiana, police officer from 1973 until arrested in 1996 (he had attained the rank of captain), was charged with conspiracy to distribute cocaine and phenmetrazine tablets (preludes), in violation of 21 U.S.C. § 846 (Count I), and with harboring a fugitive, in violation of 18 U.S.C. § 1071 (Count II). A jury was unable to reach a verdict at Green's first trial in 1997.

But, at his second trial that year, a jury found him guilty on both counts. The Government presented evidence that Colomb, a drug dealer, paid Green monthly for information to help Colomb and others in his organization avoid arrest, including after Colomb became a fugitive in 1988. Colomb testified that he avoided arrest from 1981 until 1995 through information Green provided.

Claiming that, instead, Colomb was a confidential informant, Green denied taking money from him. Green admitted, however, that, while Colomb was a fugitive, they spoke by telephone, but claimed that he was attempting to persuade Colomb to surrender; denied assisting Colomb in avoiding apprehension; and stated that he last spoke with Colomb in 1991, five years before Green was arrested.

Post-verdict, the court denied judgment as a matter of law or a new trial. Green was sentenced *inter alia*, to five years imprisonment on each of the two counts, to run consecutively.

## II.

Green contests the sufficiency of evidence for his convictions, and the admission of a co-conspirator's statements and rebuttal testimony regarding his reputation for trustworthiness. The Government challenges the court imposing, on the basis that the conspiracy verdict was "ambiguous", only a five-year sentence (statutory maximum for conspiracy based solely on preludes) on that count. (Alternatively, it contends that, even if the verdict was ambiguous, drug type and quantity are not elements of the conspiracy offense, but instead are sentencing factors. Concluding that the verdict is not ambiguous, we need not address this contention.)

## A.

In reviewing Green's properly-preserved sufficiency of the evidence challenge, we must determine whether "a rational trier of fact could have found that the evidence, viewed in the light most favorable to the government, established guilt beyond a reasonable doubt". **United States v. Truesdale**, 152 F.3d 443, 446 (5th Cir. 1998); FED. R. CRIM. P. 29. Along this line, authority hardly need be cited for the rule that "[i]t is the sole province of the jury, and not within the power of this Court, to weigh conflicting

evidence and evaluate the credibility of witnesses". ***United States v. Millsaps***, 157 F.3d 989, 994 (5th Cir. 1998) (internal quotation marks and citation omitted). In the light of the conflicting testimony, especially by Green and Colomb, and the proper credibility choices for the jury, this was indeed a classic case for a jury. Green fails to hurdle these almost insurmountable obstacles.

1.

The harboring statute provides, in pertinent part:

> Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined....

18 U.S.C. § 1071. "Section 1071 requires some affirmative action to support a conviction. Failure to disclose a fugitive's location and giving financial assistance do not constitute harboring, but any physical act of providing assistance ... to aid the prisoner in avoiding detection and apprehension will make out a violation of section 1071". ***United States v. Stacey***, 896 F.2d 75, 77 (5th Cir. 1990) (internal quotation marks and citation omitted).

Conviction under § 1071 requires proof beyond a reasonable doubt that the defendant: (1) knew that a federal arrest warrant had been issued; (2) engaged in physical acts that aided the fugitive in avoiding detection and apprehension; and (3) intended

- 4 -

to prevent the fugitive's discovery. *United States v. Zerba*, 21 F.3d 250, 252 (8th Cir. 1994). Green maintains that the Government failed to prove either his knowledge of Colomb's federal arrest warrant or, after learning of its existence, his providing assistance to him.

a.

Regarding his November 1991 federal warrant for unlawful flight to avoid prosecution, Colomb testified that, in late 1991, he received a copy of a confidential Lafayette Police Department report from his brother, Harold Colomb. Another brother, Paul Colomb, a Lafayette attorney, testified that the report, in a sealed envelope, was delivered by an unknown person to his residence; and that he took the report to Harold Colomb, who lived in Texas, and might have contact with Colomb. The report stated, *inter alia*, that Colomb's federal warrant was in effect as of 18 November 1991. Colomb testified that he discussed the report with Green.

Green admitted knowing that Colomb was a fugitive from a 1988 state drug racketeering indictment, but asserts that, nevertheless, he was not aware until trial of the federal warrant. In this regard, he denied seeing the confidential report before the Government revealed it then. But, of course, the jury was entitled to discredit Green's testimony and to find instead that he was

aware of the report's contents, including concerning the federal warrant.

And, there was other circumstantial evidence from which the jury could have concluded that Green was aware of the warrant. An FBI Agent testified that police agencies are advised of federal fugitive warrants, and that they are put into a computer database to which all police agencies, including the Lafayette Police Department, have access.

b.

Concerning Green acting after November 1991 to aid Colomb in avoiding detection and apprehension, the Government presented evidence that: Colomb applied for employment in Houston, Texas, on 23 May 1994, using the name "Ronald Prince" (Colomb's deceased cousin); Colomb asked Green to ensure that this alias did not have any outstanding warrants; on 26 May, three days after Colomb applied for employment, a Lafayette Police Department computer was used to inquire about Ronald Prince, revealing a valid Louisiana driver's license and no record of traffic violations; telephone toll records reflected that a telephone call was made that same day from Green's residence to a pay telephone in Houston; Colomb was living in the Houston area; and Colomb was hired on 6 June, 11 days after the computer check and telephone call.

In addition, Colomb testified that Green provided him with information that enabled him to avoid arrest during the entire time

he was a fugitive; and that Green brought money to him on many occasions during that period.

### 2.

A 21 U.S.C. § 846 drug trafficking conspiracy conviction requires proof beyond a reasonable doubt that:  (1) there was an agreement between two or more persons to violate the narcotics laws; (2) the defendant knew of the conspiracy and intended to join it; and (3) he voluntarily participated in it.  *E.g.*, **United States v. Medina**, 161 F.3d 867, 872 (5th Cir. 1998), *cert. denied*, ___ U.S. ___, 119 S. Ct. 1344 (1999).

Green's sufficiency challenge for the conspiracy is premised almost entirely on attacking Colomb's credibility.  But, again, credibility choices are for the jury.

Colomb testified that: in January 1981, while at the Lafayette Airport to pick up preludes, he was arrested by Green and three other officers; from inside Colomb's vehicle, Green removed a small bag containing $5,000 and concealed it under his arm; when he asked Green's plans for the bag, Green responded "don't worry about it"; no one was standing next to Colomb when he made the inquiry; the next day, he went to Green's home, and Green gave him the $5,000; Colomb gave $500 of it to Green; and, thereafter, he paid Green monthly for protection and information needed to avoid apprehension.

Green contends that, as a matter of law, Colomb's testimony regarding the 1981 arrest is incredible, claiming that it is factually impossible for him to have searched Colomb's car, seized the money, and then discussed it with Colomb, who was under arrest and handcuffed, without alerting other arresting officers. And, based on Colomb's claimed lack of credibility on that point and motivation to lie, Green maintains that Colomb's testimony is insufficient to support the conspiracy verdict.

"Testimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have occurred under the laws of nature." *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994), *cert. denied*, 514 U.S. 1097 (1995); *see also United States v. Casteneda*, 951 F.2d 44, 48 (5th Cir. 1992) (internal quotation marks and citation omitted) (testimony is incredible as a matter of law only when it "is so unbelievable on its face that it defies physical laws"). Green relies on the testimony of other participating officers in Colomb's 1981 arrest. But, none testified that Green could not have removed a bag from Colomb's vehicle; instead, they testified that they did not see him do so and did not clearly recollect the details of the 16-year-old arrest. Needless to say, Colomb's testimony is far from being incredible.

Moreover, notwithstanding Colomb's motivation to lie, the Government presented substantial evidence corroborating much of his

testimony, including: the date of his 1981 arrest; while a fugitive, he telephoned Green; while a fugitive in 1991, he received the confidential report; Alton Miller (discussed *infra*) worked for him as a drug courier; Green met with Colomb in Addison, Texas, in 1990; and, as discussed, Colomb used the alias "Ronald Prince" while a fugitive, in conjunction with the computer check at the Lafayette Police Department.

B.

For two types of evidentiary rulings, Green seeks a new trial. Such rulings are reviewed for abuse of discretion. *E.g.*, **United States v. Asibor**, 109 F.3d 1023, 1032 (5th Cir.), *cert. denied*, ___ U.S. ___, 118 S. Ct. 254 (1997); *see also* **United States v. Flores**, 63 F.3d 1342, 1377 (5th Cir. 1995), *cert. denied*, 519 U.S. 825, 1022 (1996). "If an abuse of discretion is found, the harmless error doctrine is applied"; therefore, "we will affirm evidentiary rulings unless they affect a substantial right of the complaining party". **Asibor**, 109 F.3d at 1032; FED. R. EVID. 103.

1.

Green claims reversible error in the admission of testimony by two women linked to Alton Miller, Colomb's drug courier, concerning Miller's statements about the protection Green provided him and the Colomb drug organization. Green claims that the statements were not made in furtherance of the conspiracy and therefore, pursuant to FED. R. EVID. 801(d)(2)(E), were not admissible.

Rule 801(d)(2)(E) provides, in pertinent part: "A statement is not hearsay if ... offered against a party and is ... by a coconspirator of a party during the course and in furtherance of the conspiracy". Accordingly, "[b]efore admitting a co-conspirator's statement under this Rule, the court must determine by a preponderance of the evidence (1) that there was a conspiracy involving the declarant and the non-offering party, and (2) that the statement was made 'during the course and in furtherance of the conspiracy'". *United States v. Burton*, 126 F.3d 666, 671 (5th Cir. 1997). *Ruling that a statement was made in furtherance of a conspiracy is a factual finding, reversible only if clearly erroneous.* *United States v. Stephens*, 964 F.2d 424, 434 (5th Cir. 1992).

Cassandra Bradley testified that she was sexually involved with Miller in 1988-89 and that: on one occasion, she had helped him count large sums of money; on another, she had seen him with four or five kilograms of cocaine; on other occasions, he had cocaine while with her; he told her he had taken over Colomb's cocaine business; in 1989, Miller told her he had just had dinner with Green, Green had given him the "green light" to conduct that business, and Green had told him he (Miller) was protected; he had paid Green $20,000-$30,000 that year for protection; and on one occasion, when a police car pulled up next to Bradley and Miller's vehicle at a traffic light, Miller was initially concerned, but his

concern was alleviated when he recognized the officer as someone who worked for Green, because Miller said he was protected.

When asked, outside the presence of the jury, why Miller had told her about being protected by Green, Bradley testified that Miller had told her that he had not responded to her pages because he was having dinner with Green. She testified further that she was not worried about being arrested because she was not part of Miller's drug-dealing business.

Cheryl Wiltz testified that: she was sexually involved with Miller from 1974-1989, including having two children by him; and she accompanied Miller to Miami once to pick up cocaine for Colomb and was with him on another occasion to purchase a very substantial wedding gift for Green's child, so Miller could show his appreciation for what Green had done for him. Outside the presence of the jury, Wiltz testified that Miller told her about showing his appreciation to Green because she and Miller were very close, but she did not believe that he expected her to do anything with the information.

This testimony by Bradley and Wiltz is claimed inadmissible on the basis that, instead of the statements being made in furtherance of the conspiracy, they were in furtherance of Miller's relationships with the women; and the evidence is claimed prejudicial on the basis that, *inter alia*, Green was forced to call convicted drug dealer Miller to deny making the statements.

"The requirement that a co-conspirator's statement be 'in furtherance of' the conspiracy 'is not to be construed too strictly lest the purpose of the exception be defeated'". *Burton*, 126 F.3d at 674 (quoting *United States v. Broussard*, 80 F.3d 1025, 1039 (5th Cir.), *cert. denied*, 519 U.S. 906 (1996)). Our court has "shunned an overly literal interpretation of this [phrase]"; but on the other hand, "[m]ere idle conversation ... is not considered in furtherance of a conspiracy". *Id.* (internal quotation marks and citation omitted).

Along this line, the following have been found to be "in furtherance of" a conspiracy:

> [A] statement that identifies the role of one co-conspirator to another (*United States v. Magee*, 821 F.2d 234, 244 (5th Cir. 1987)); statements conveying information that could have been intended to affect future dealings between the parties (*United States v. Patton*, 594 F.2d 444, 447 (5th Cir. 1979)); puffing, boasts, and other conversation when used by the declarant to obtain the confidence of one involved in the conspiracy (*[United States v.] Miller*, 664 F.2d [94,] 98 [(5th Cir. 1981)]); statements which are puffing or boasts, but which are used to obtain the confidence of the person toward whom the statement is directed (*United States v. Johnson*, 872 F.2d 612, 623 (5th Cir. 1989)).

*Burton*, 126 F.3d at 675 (internal quotation marks, brackets, and ellipses omitted). *See also United States v. Flores*, 63 F.3d at 1377 (statements made to inform conspirators of progress of

- 12 -

conspiracy or made "in order to encourage loyalty and obedience among the conspirators" are in furtherance of the conspiracy).

The court did not clearly err in finding that Miller's statements furthered the conspiracy. He reassured the women (they accompanied him when he had drugs and drug money) that, through his involvement with Green, they were protected. Accordingly, there was no abuse of discretion.

2.

Green maintains that rebuttal testimony about his reputation for trustworthiness was inadmissible, founded on his claim that he did not present evidence permitting such rebuttal. *See* FED. R. EVID. 404(a)(1) ("[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same", is admissible).

Green called as witnesses several Lafayette police officers he had supervised in the narcotics unit. They testified that: he was their mentor; he had a unique, neighborhood-oriented policing style; he never instructed them to not enforce the law regarding Colomb or members of his organization; and they had no information to indicate that he was anything other than a "good cop" and had no knowledge of his having taken money from, or providing protection to, Colomb.

In rebuttal, the Government called retired Lafayette Police Officer Dartez, who testified that: Green's reputation as a police

officer was not trustworthy; and he knew of specific corroborating instances. But, the court did not allow him to describe them.

Green contends that he did not present evidence of his reputation for being honest, trustworthy, or law-abiding; he claims, instead, to have presented only factual testimony regarding observations of his conduct as a policeman, not knowledge of his reputation in the police community. Green contends that he was prejudiced by the admission of such damaging evidence, because, *inter alia*, he had no subsequent opportunity to present his own reputation evidence.

In the light of Green's witnesses' testimony that he was their mentor, a "good cop", and that they looked up to him for his style of policing, the court did *not* abuse its discretion in ruling that the Government was entitled to rebut that testimony with evidence that others in the law enforcement community disagreed.

### C.

The indictment charged conspiracy to distribute cocaine *and* phenmetrazine (preludes), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and (D). Pursuant to subpart (A) of § 841(b)(1), ten years is the *mandatory minimum sentence* for the charged distribution of over 50 kilograms of cocaine; but, pursuant to subpart (D), the *maximum sentence* for the charged distribution of over 50,000 phenmetrazine tablets is far less — five years.

- 14 -

The jury returned a general verdict, finding Green guilty "[o]n Count I" (conspiracy) and "[o]n Count II" (harboring).  For sentencing, the court concluded that the conspiracy verdict was ambiguous, because the jury was not asked, and thus did not specify, whether Green conspired to distribute preludes, *or* cocaine, *or* both.  Accordingly, over the Government's objection, and although the sentencing court found that, in addition to the preludes, at least 50 kilograms of cocaine were also involved in the conspiracy, it imposed a five-year sentence, the *statutory maximum* for the preludes.  In so doing, as discussed below, it relied on **United States v. Bounds**, 985 F.2d 188 (5th Cir.) (if general jury verdict for conspiracy to manufacture amphetamine and phenylacetone is ambiguous, defendant must be sentenced based on drug which produces lowest *Guidelines offense level*), *cert. denied*, 510 U.S. 845 (1993); **United States v. Cooper**, 966 F.2d 936, 940-41 (5th Cir.) (*recognizing general rule* that, for multiple-object conspiracy with general verdict ("the jury failed to specify the violation found"), sentence  cannot exceed *statutory maximum* for offense with least severe penalty), *cert. denied*, 506 U.S. 980 (1992); and **United States v. Fisher**, 22 F.3d 574, 576-77 (5th Cir.) (same), *cert. denied*, 513 U.S. 1008 (1994).

Shortly before sentencing, however, the Supreme Court decided **Edwards v. United States**, 523 U.S. 511, ___, 118 S. Ct. 1475, 1477 (1998), which concerned a charged conspiracy to distribute cocaine

- 15 -

*and* crack.  The jury returned a general guilty verdict, after being instructed that defendants could be found guilty if the conspiracy involved *either* cocaine *or* crack.  Accordingly, defendants claimed that their sentences should have been based on the Guidelines for cocaine, rather than for crack (greater possible Guidelines' sentence than for cocaine).  Noting "a potential conflict among the circuits on this question" (citing ***Bounds***, among other cases), ***id.***, the Court held that the *sentencing court* was authorized by the Guidelines (indeed, required) to determine whether crack, *or* cocaine, *or* both were involved.  It noted, however, that defendants' "statutory and constitutional claims would make a difference *if it were possible to argue*, *say*, that the sentences imposed exceeded the maximum that the statutes permit for a cocaine-only conspiracy.  That is because a maximum sentence set by statute trumps a higher sentence set forth in the Guidelines".  ***Id.*** (emphasis added).

Although ***Edwards*** was cited to it pre-sentencing, the district court concluded, as noted, that ***Bounds***, ***Cooper***, and ***Fisher*** controlled; but, in so doing, it recognized "it [was] in a gray area" and hoped we would "address this with specificity".  Then, subsequent to Green's sentencing, our court held in ***Medina***, 161 F.3d at 874, that our ***Bounds***-rule (concerning Guidelines offense levels) was "rejected" by ***Edwards***.

The **Bounds**-obstacle having been removed, the Government contends, *inter alia*, that the general rule about statutory maximums *recognized* in **Fisher** and **Cooper** is inapplicable, maintaining that, even though a general verdict was used, Green's verdict was *not* ambiguous; therefore, his sentence should *not* have been limited to the statutory maximum for preludes.

Accordingly, we must determine whether the general verdict is "ambiguous" *ipso facto*. The obvious starting point is that, for a conspiracy with more than one object-offense, a sentence *set by statute* for one of those offenses should *not* be imposed if the jury did *not* find the defendant guilty of that object-offense. Restated, different considerations are in play than for Guidelines' sentencing, such as where relevant conduct is considered.

The general rule *recognized* by **Cooper**, 966 F.2d at 940, and **Fisher**, 22 F.3d at 576, serves this salutary purpose. We take care in limiting **Cooper** and **Fisher** to simply "recognizing" the general rule. This is the term employed by **Fisher** in citing **Cooper** for the rule. **Fisher**, 22 F.3d at 576. For the sentencing issue in each case, where the rule was *recognized*, the sentence imposed did *not* exceed the statutory maximum for the object-offense with the least severe penalty. *See* **Cooper**, 966 F.2d at 941; **Fisher**, 22 F.3d at 576. But, in each case, defendants asserted that the "least severe principle" also applied to Guidelines calculations. **Cooper**, 966

F.2d at 942; *Fisher*, 22 F.3d at 577.  Each rejected this transfer. *Cooper*, 966 F.2d at 941-42; *Fisher*, 22 F.3d at 576-77.  But, in so doing, after discussing relevant Guidelines provisions, *Fisher* again noted the general rule, stating that defendants' Guidelines "argument overlooks the limitation of the sentence to the statutory maximum for the least severe object offense alleged in the count of conviction".  *Fisher*, 22 F.3d at 577.  At best, this is *dicta*; as discussed, the sentences did *not* exceed the statutory maximum for the object-offenses.

Moreover, the procedural scenario for the case at hand is far different.  For example, Green's jury was *not* instructed, *as was the* ***Cooper*** *jury,* that it could convict for conspiracy if the Government proved an agreement to distribute only one of the controlled substances alleged in the indictment and that, if so, it must agree unanimously as to which controlled substance was distributed.  *See* ***Cooper***, 966 F.2d at 939.  *Fisher* does not discuss such underlying procedural matters employed in that case.

In sum, we do not read ***Cooper*** or ***Fisher***, which simply and summarily *recognized* the general rule, to hold that a general verdict for a conspiracy with more than one object-offense is "ambiguous" *ipso facto*.  Nor do we understand the earlier-quoted language from ***Edwards***, 523 U.S. at ___, 118 S. Ct. at 1477, about a "possible" contention regarding the statutory maximum to mandate ambiguity in a general verdict.  Again, the jury was instructed in

- 18 -

***Edwards*** that it could find guilt for the charged conspiracy if it found "the conspiracy involved *either* cocaine *or* crack". ***Id.*** (emphasis added). As noted earlier, and as discussed *infra*, that is *not* the situation here.

Instead, especially in the light of ***Edwards*** and ***Medina,*** even where there is a conspiracy general verdict, the sentencing court can still conclude that the jury found, beyond a reasonable doubt, guilt for more than just one object-offense. *See **United States v. Watts***, 950 F.2d 508, 514-15 (8th Cir. 1991) (where indictment charged conspiracy to distribute heroin, cocaine, *and* cocaine base, and evidence of all three drugs introduced, verdict not ambiguous), *cert. denied*, 503 U.S. 911 (1992).

The indictment charged conspiracy to distribute "over fifty (50) kilograms of cocaine, ... *and* over fifty thousand (50,000) tablets of phenmetrazine or 'preludes'"; described the object of the conspiracy as a "scheme for profit involving transportation and distribution of cocaine *and* phenmetrazine or 'preludes'"; alleged that the preludes distribution began in 1979 and was discontinued in 1984, when the enterprise began distributing cocaine; and alleged that Green and his co-conspirators used vehicles to transport and deliver "cocaine *and* phenmetrazine or 'preludes'". (Emphasis added.)

In five instances, the jury instructions refer to the two controlled substances. In four of those five, "and" separates

- 19 -

"cocaine" from "phenmetrazine or preludes": the first, that Green "is charged, *in Count I of the indictment* with conspiring to distribute cocaine *and* phenmetrazine or preludes, controlled substances"; the second, in listing the elements of the offense, that, to find Green guilty, the jury must be convinced beyond a reasonable doubt "[t]hat two or more persons made an agreement to commit the crime of distribution of *cocaine, phenmetrazine or preludes as charged in the indictment*"; the third and fourth, in the same sentence, that "[t]o distribute cocaine *and* phenmetrazine or preludes means for one person to intentionally transfer cocaine *and* phenmetrazine or preludes to another"; and the fifth, and final, that "at the time of the transfer the person making the transfer knew that cocaine *and* phenmetrazine or preludes were controlled substances". (Emphasis added.)

As noted, in its general verdict, the jury found Green guilty "[o]n Count I" (conspiracy) and "[o]n Count II" (harboring). Any chance of ambiguity arising from the one instance in the instructions where a comma, *rather than a conjunction,* separated "cocaine" from "phenmetrazine or preludes" was removed by the phrase that immediately followed — "as charged in the indictment". In other words, we agree with the Eleventh Circuit that this possible ambiguity in the instruction cannot be resolved without examining the evidence. Green

> may not prevail on [his] claim simply by
> showing that [he was] convicted under

> conspiracy instructions which, on their face, *might permit* the jury to return a guilty verdict if the conspiracy found did not involve [cocaine]. It must also appear that the evidence would support such a construction of the verdict actually obtained. In the absence of the latter, there can be no genuine ambiguity in the jury's verdict, as any purported ambiguity would only have been created by a reading of the verdict that was not supported by the evidence in the case.

*United States v. Dennis*, 786 F.2d 1029, 1038-39 (11th Cir.) (emphasis added), *reh'g granted in part on other grounds*, 804 F.2d 1208 (11th Cir. 1986), *cert. denied*, 481 U.S. 1037 (1987).

The evidence is overwhelming that the conspiracy, charged and proved, had as its objectives the distribution of cocaine *and* preludes. Colomb testified that: he began selling preludes in the 1970s and became involved in distributing cocaine in 1983, continuing until 1994; he began paying Green for information and protection in 1981, initially $500, but later approximately $10,000 per month; Green was his "partner", from 1981 to 1988, seeing him once a month; and, after he (Colomb) became a fugitive in 1988, he continued to be involved in cocaine distribution and to receive information and protection from Green.

There is *no* evidence to support concluding that the jury found the conspiracy involved preludes, but *not* cocaine. Accordingly, it is inconceivable that the verdict was based solely on finding that Green participated in a conspiracy involving *only* preludes. Instead, we are more than confident that the jury was convinced

- 21 -

beyond a reasonable doubt that both cocaine *and* preludes were involved.

Considering the conjunctive language used in the indictment to describe the controlled substances that were the objects of the conspiracy; the jury instructions, which also used conjunctive language and referred to the indictment; and the overwhelming evidence that the conspiracy involved cocaine *and* preludes, we conclude that the jury found guilt beyond a reasonable doubt for each of the object-offenses. Accordingly, the verdict was *not* ambiguous. Therefore, it was error to limit Green's sentence to the statutory maximum for preludes.

### III.

For the foregoing reasons, the convictions are **AFFIRMED**; the sentence is **VACATED**; and the case is **REMANDED** for resentencing.

*AFFIRMED in part, VACATED in part, and REMANDED*

- 22 -