RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0042P (6th Cir.)
File Name: 01a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

Nos. 99-3763/4144

RANDALL R. NEUHAUSSER
(99-3763) and SHEILA
NEUHAUSSER (99-4144),
*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 98-00048—S. Arthur Spiegel, District Judge.

Argued: November 30, 2000

Decided and Filed: February 14, 2001

Before: NORRIS and CLAY, Circuit Judges; ROSEN,
District Judge.[*]

———————————

[*] The Honorable Gerald E. Rosen, United States District Judge for the
Eastern District of Michigan, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** Philip E. Pitzer, Cincinnati, Ohio, Clayton G. Napier, Hamilton, Ohio, for Appellants. William E. Hunt, UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Philip E. Pitzer, Cincinnati, Ohio, Clayton G. Napier, Hamilton, Ohio, for Appellants. William E. Hunt, UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

**OPINION**
_____

ROSEN, District Judge.

## I. *INTRODUCTION*

Defendant/Appellant Randall Neuhausser appeals his sentence for conspiracy to distribute and to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Defendant/Appellant Sheila Neuhausser appeals both her conviction and her sentence for this drug conspiracy offense, and also appeals her conviction under 18 U.S.C. § 1952 for traveling in interstate commerce to further an unlawful activity, the distribution of cocaine. Following a trial that commenced on September 28, 1998, the jury returned guilty verdicts against both Randall and Sheila Neuhausser on these charges on October 7, 1998. On June 3, 1999, Mr. Neuhausser was sentenced to 360 months of imprisonment and 10 years of supervised release, plus a $25,000 fine. On September 9, 1999, Ms. Neuhausser was sentenced to 5 years of imprisonment, 5 years of supervised release, and a $2,500 fine. Both defendants timely appealed, and these appeals were consolidated by motion of the Government.

On appeal, Randall Neuhausser argues that he was erroneously sentenced to a term of imprisonment beyond the statutory maximum sustainable under the jury verdict alone, where the determination of drug quantities involved in the conspiracy was made by the District Court under a "preponderance of the evidence" standard, rather than by the jury under a more stringent "beyond a reasonable doubt" standard. Mr. Neuhausser further contends that he should have been sentenced by reference to the drug that would have produced the lesser sentence (marijuana), rather than the drug that produced the greater sentence (cocaine), where the jury purportedly was permitted to return a guilty verdict upon finding that Mr. Neuhausser had conspired to distribute either or both of these substances, and where the jury's general verdict does not indicate which of these findings it made.

For her part, Sheila Neuhausser first contends that the jury verdicts and her convictions on the drug conspiracy and interstate travel charges are against the weight of the evidence. Ms. Neuhausser also argues that she was denied the effective assistance of counsel at trial, through her counsel's failure to properly cross-examine key witnesses, object to the admission of hearsay, and produce witness testimony that would contradict the incriminating testimony of other witnesses. Finally, she asserts that she was erroneously charged at sentencing with the entire amount of drugs involved in the conspiracy, despite her purportedly limited role in this conspiracy.

For the reasons stated below, we affirm Randall Neuhausser's sentence and Sheila Neuhausser's conviction and sentence on the drug conspiracy charge, but we reverse Ms. Neuhausser's interstate travel conviction as against the weight of the evidence.

## II.  *FACTUAL AND PROCEDURAL BACKGROUND*

At the outset, we recite only a bare outline of the facts and evidence presented at trial, with further details to be presented

below as they bear upon the various issues before us. The indictment in this case was filed on April 16, 1998 in the U.S. District Court for the Southern District of Ohio, and named Defendants/Appellants Randall and Sheila Neuhausser, along with four other individuals, as co-conspirators in a drug trafficking enterprise involving marijuana and cocaine. This conspiracy allegedly ran from 1993 through the date of the indictment. In addition, the indictment charged Sheila Neuhausser and a co-defendant, Scott Meyers, with traveling in interstate commerce in furtherance of an unlawful activity, the distribution of a controlled substance. Finally, the indictment charged another co-defendant, James McCarty, with a number of other drug and related offenses. All four co-defendants ultimately entered guilty pleas, and agreed to testify against the Neuhaussers.

At the Neuhaussers' trial, which commenced on September 28, 1998, the Government presented evidence regarding two drug trafficking ventures. First, witnesses testified as to trips made to California to obtain marijuana for subsequent sale by Randall Neuhausser and a co-defendant, Doug Burgess. This testimony indicated that at least some of the trips were made in a 1994 Ford Taurus purchased by Randall Neuhausser and Burgess, and that the marijuana was brought to the Neuhaussers' residence at 2249 Bone Road, Lebanon, Ohio.[1] In all, witnesses testified to approximately eight trips to California to obtain carloads of marijuana. The eighth trip concluded unsuccessfully on September 1, 1997, when co-defendant Scott Meyers was arrested by state troopers in Nebraska as he returned from California. The Nebraska state

---

[1] According to Sheila Neuhausser's presentence report, she and Randall were married on February 2, 1996 and divorced on November 19, 1997. After the divorce, Ms. Neuhausser apparently continued to live at the Bone Road residence through the period encompassed by the indictment. In addition, beginning in 1993, and continuing through her indictment, Ms. Neuhausser was employed by a business, Consolidated Properties, which was owned and operated by Mr. Neuhausser and was run out of the Bone Road residence.

As noted earlier, while Ms. Neuhausser was charged with the same drug quantities as Mr. Neuhausser, the District Court granted her request for a downward departure, and deemed her participation as lying between "minor" and "minimal." (9/9/99 Sentencing Hearing at 15, J.A. at 1102 (citing U.S.S.G. § 3B1.2).) Regarding the drug quantities, we have observed, and the Sentencing Guidelines confirm, that a defendant convicted of conspiracy may be charged with all reasonably foreseeable acts and omissions of co-conspirators in furtherance of the conspiracy. *See Critton*, 43 F.3d at 1098-99 (citing U.S.S.G. § 1B1.3, Application Note 2). In this case, there was testimony that Ms. Neuhausser was present on a number of occasions when drugs were brought back from California to the Neuhaussers' residence in Ohio, when drug payments were made, and when the drug enterprise was discussed. In addition, as noted earlier, some testimony indicated that she took a more active role on a few occasions. On this record, we cannot say that the District Court committed clear error in determining the drug quantities chargeable to Sheila Neuhausser, and in calculating her overall sentence.

## IV. *CONCLUSION*

For the reasons set forth above, we affirm the sentence imposed upon Randall Neuhausser for his drug conspiracy conviction. Further, we affirm Sheila Neuhausser's drug conspiracy conviction, reverse her conviction under the Travel Act, and affirm the District Court's sentence of Sheila Neuhausser on the drug conspiracy charge. Consequently, as to Sheila Neuhausser, we remand this matter to the District Court for entry of an amended judgment in accordance with this decision.

*Aguwa*, 123 F.3d at 423 (internal quotations and citations omitted).

We believe it best to adhere to this practice here. First, as to the conflict of interest claim, there is nothing in the record before us that would permit us to determine whether a conflict existed. Rather, we have only appellate counsel's representations, without citation to the record, that Ms. Neuhausser's trial counsel met with Mr. Neuhausser and was compensated by him.

As for the remaining claims of ineffective assistance, factfinding would be required to resolve the "prejudice" prong of the inquiry. We cannot accept Ms. Neuhausser's argument that the evidence relating to her involvement in the drug conspiracy was so weak that the failure to properly impeach a key witness — specifically, Doug Burgess, particularly as to his testimony that Ms. Neuhausser pointed a gun at him during his strip search — or the failure to object to purported hearsay amounts to clear prejudice as a matter of law. Rather, we believe that the issues raised by Sheila Neuhausser as to cross-examination of witnesses and the admissibility of hearsay must await consideration under a more fully-developed record.

**E.    Sheila Neuhausser's Sentence Is Not Inconsistent with Her Role in the Drug Conspiracy.**

Finally, Sheila Neuhausser argues that her 5-year sentence is not reconcilable with her limited role in the drug conspiracy, and reflects drug quantities that are not properly chargeable to her.[12] We review the factual findings of the District Court at sentencing for clear error. *See United States v. Critton*, 43 F.3d 1089, 1098 (6th Cir.), *cert. denied*, 514 U.S. 1121 (1995).

---

[12]To the extent that this latter point implicates constitutional issues, we have addressed them above and found no constitutional infirmity in Ms. Neuhausser's sentence.

troopers recovered 123.5 pounds of marijuana from a white Ford Taurus, and a check of the car's Ohio license plate revealed that it was registered to Burgess. A used car salesman who testified at trial, Keith Johnson, stated that this vehicle actually had been purchased by Randall Neuhausser, who asked that the car be placed in Burgess's name.

Next, the Government presented evidence that a pickup truck belonging to Randall Neuhausser was used to transport cocaine from Florida. One witness, co-defendant James McCarty, testified that the cocaine was transported inside the hollow portion of the tailgate panel of this pickup truck. McCarty further testified that, for a period of time, he was purchasing one to two kilos of cocaine per month from Neuhausser, at a cost of $30,000 per kilo. Finally, a DEA agent who executed a search warrant at the Bone Road property in March of 1998 testified that the pickup truck was seized as evidence during the search, and that a subsequent swab of the inside of the tailgate tested positive for the presence of cocaine.

At trial, Randall Neuhausser was represented by attorney Merlyn Shiverdecker, and Sheila Neuhausser was represented by attorney Philip E. Pitzer. On October 7, 1998, the jury returned guilty verdicts against both Randall and Sheila Neuhausser on the drug conspiracy charge, and a guilty verdict against Ms. Neuhausser on the interstate travel charge. Post-trial motions were filed on behalf of both defendants, with Ms. Neuhausser represented in this post-trial phase and at sentencing by attorney Thomas Miller. In the present appeal, Randall Neuhausser is represented by Philip Pitzer, Sheila's trial counsel, while Ms. Neuhausser is represented by new counsel, Clayton Napier. According to Ms. Neuhausser's brief on appeal, Mr. Pitzer met with Randall Neuhausser on several occasions while he was representing Sheila Neuhausser, and Mr. Neuhausser paid at least a portion of Pitzer's fee for representing Ms. Neuhausser at trial.

Randall Neuhausser was sentenced on June 3, 1999 to 360 months of imprisonment, a ten-year period of supervised release, and a $25,000 fine. At sentencing, the District Court found that Mr. Neuhausser was responsible for over 2,000 pounds of marijuana and over 75 kilograms of cocaine. The Court also applied a four-level enhancement for Mr. Neuhausser's leadership role. Accordingly, upon determining that Mr. Neuhausser's offense level was 40 and his criminal history was category IV, the District Court found that the appropriate sentencing range under the Sentencing Guidelines was 360 months to life, and elected to sentence Mr. Neuhausser at the low end of this range.

Sheila Neuhausser was sentenced on September 9, 1999 to five years in prison, five years of supervised release, and a $2,500 fine. The District Court imposed a sentence of 60 months on each of the two counts of conviction, to be served concurrently. In imposing this sentence, the Court found that Sheila Neuhausser, like Randall, was chargeable with over 75 kilograms of cocaine and over 2000 pounds of marijuana. However, the District Court granted a downward departure for Ms. Neuhausser's minor role in the drug conspiracy, and an additional departure for her cooperation with the authorities. Thus, Ms. Neuhausser was assigned a base offense level of 24 and a category II criminal history, resulting in a sentencing range of 57 to 71 months. The District Court's 60-month sentence fell near the low end of this range.

**D.    The Record Is Inadequate to Address Sheila Neuhausser's Claim of Ineffective Assistance of Counsel on Direct Appeal.**

As her next issue on appeal, Ms. Neuhausser argues that she was denied the effective assistance of counsel at trial. She cites four types of inadequate performance or improper conduct by her trial counsel: (1) failure to properly cross-examine certain Government witnesses in order to lay the foundation for impeaching these witnesses through extrinsic evidence of their prior inconsistent statements; (2) failure to properly cross-examine witnesses to permit the jury to distinguish Ms. Neuhausser's actions and culpability from her husband's; (3) failure to object to inadmissible hearsay during the testimony of Ms. Neuhausser's alleged co-conspirators; and (4) a conflict of interest, where Sheila Neuhausser's counsel apparently met with and was being paid by her husband. Our inquiry on this issue involves mixed questions of law and fact. *See United States v. Walker*, 160 F.3d 1078, 1089 (6th Cir. 1998), *cert. denied*, 526 U.S. 1056 (1999); *United States v. August*, 984 F.2d 705, 711 (6th Cir. 1992), *cert. denied*, 510 U.S. 854 (1993).

As the Government correctly notes, we typically do not consider ineffective assistance of counsel claims on direct appeal, because the record usually is not sufficiently developed to permit proper assessment of such claims. *See United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997). We have explained:

This rule stems from the fact that a finding of prejudice is a prerequisite to a claim for ineffective assistance of counsel, and appellate courts are not equipped to resolve factual issues. As a result, our court has routinely concluded that such claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. § 2255 so that the parties can develop an adequate record on this issue.

that guest registration records from a hotel in Fort Lauderdale, Florida showed that Sheila Neuhausser had checked in on August 6, 1997 and departed on August 10. (J.A. at 576, 608-11.) These hotel records also reflect that Ms. Neuhausser was traveling in a Ford Taurus with Ohio license plates. (*Id.* at 612.)

The obvious deficiency in this evidence is that it provides no basis for concluding that Ms. Neuhausser traveled to Florida in connection with an unlawful drug enterprise, rather than for a lawful purpose. The Government seeks to forge this necessary link by pointing to James McCarty's testimony that he had been told by Randall Neuhausser that his source of cocaine was in Florida. (J.A. at 144, 166.) Accepting this testimony as true, it still does not provide adequate support for the inference that Ms. Neuhausser's August, 1997 trip to Florida was somehow related to her husband's acquisition of cocaine from that same state. In fact, this inference is undercut by other testimony that Mr. Neuhausser's pickup truck, and not the Ford Taurus, was the principal vehicle used in the cocaine distribution enterprise. In addition, the testimony at trial suggested that Randall Neuhausser obtained the cocaine from Miami, Florida, (*id.* at 226), while his wife traveled to Fort Lauderdale.

Consequently, upon reviewing the record, we are unable to identify sufficient evidence from which a reasonable juror could find, beyond a reasonable doubt, that Sheila Neuhausser violated the Travel Act through her August, 1997 trip to Florida. Therefore, we set aside Ms. Neuhausser's conviction and sentence on Count 2 of the indictment.[11]

---

[11]Because Ms. Neuhausser's sentence on this charge was to be served concurrently with her 60-month sentence on the drug conspiracy charge, our ruling does not affect her overall sentence.

### III.  *ANALYSIS*

#### A.   Randall Neuhausser's Sentence Properly Rests upon the Jury's Verdict.

In his appeal, Randall Neuhausser challenges two aspects of the sentence imposed for his drug conspiracy conviction.[2] In essence, however, these two challenges rest upon a single premise — namely, that the sentence imposed by the District Court cannot be justified solely by resort to the jury's findings under the stringent "beyond a reasonable doubt" standard, but instead is unlawfully based in part on the trial court's determinations of drug types and quantities at sentencing under the "preponderance of the evidence" standard. Because Mr. Neuhausser failed to raise this objection in the court below, we review his sentence only for plain error. *See United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996).

#### 1.   The Supreme Court's *Apprendi* Decision and Its Progeny

At the time Mr. Neuhausser was tried and sentenced in 1998 and 1999, it was well settled under Sixth Circuit precedents that "the determination of the quantity of drugs involved is not an element of the offense charged." *United States v. Jinadu*, 98 F.3d 239, 247 (6th Cir. 1996); *see also United States v. Caldwell*, 176 F.3d 898, 900-01 (6th Cir. 1999); *United States v. Hodges*, 935 F.2d 766, 769-70 (6th Cir. 1991). Thus, it is not at all surprising that the indictment in this case failed to allege any specific quantities of marijuana or cocaine involved in the charged conspiracy, and that the jury instructions did not call upon the jury to make findings as to drug quantities. Rather, the determination of

---

[2]In his brief on appeal, Mr. Neuhausser also raised two challenges to the underlying conviction itself. However, at oral argument, his counsel advised the panel that these challenges had been withdrawn, leaving only his arguments as to sentencing.

quantities was left for the District Court to determine at sentencing, under the "preponderance of the evidence" standard.  *See Caldwell*, 176 F.3d at 900 ("A large body of precedent holds that drug quantity is an issue with respect to sentencing only and is to be determined after conviction by the district judge utilizing the preponderance of the evidence standard.").

Just weeks before Mr. Neuhausser was sentenced, however, the Supreme Court signaled that this previously settled law might be open to question.  In *Jones v. United States*, 526 U.S. 227, 248, 119 S. Ct. 1215, 1226 (1999), the Court expressed concern that the "diminishment of the jury's significance by removing control over facts determining a statutory sentencing range" might implicate the Sixth Amendment guarantee of the right to a trial by jury.  In a subsequent decision handed down earlier this year, the Supreme Court confirmed what *Jones* had merely suggested — that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 2362-63 (2000).

In two recent decisions, we have considered the implications of *Apprendi* to convictions and sentences under federal drug statutes.  First, in *United States v. Rebmann*, 226 F.3d 521 (6th Cir. 2000), we addressed a case in which the defendant, Nancy Jo Rebmann, pled guilty to distribution of heroin in violation of 21 U.S.C. § 841(a)(1), with a maximum prison term of 20 years.  At sentencing, however, the District Court found, by a preponderance of the evidence, that a death had resulted from Rebmann's distribution of heroin.  This led to a revised sentencing range of 20 years to life, *see* 21 U.S.C. § 841(b)(1)(C), and Rebmann then was sentenced to a term of 292 months, or 24 years and 4 months.  On appeal, Rebmann argued that the District Court's factual determination at sentencing, that a death had resulted from her drug distribution, was not merely a "sentencing factor," but was a

it rested on a claim of insufficient evidence on the drug conspiracy verdict.

## C. The Jury's Verdict on Sheila Neuhausser's Interstate Travel Charge Lacks Sufficient Support in the Record.

Sheila Neuhausser also challenges the sufficiency of the evidence underlying her conviction on Count 2 of the indictment, which charged her with traveling in interstate commerce to further the unlawful activity of cocaine distribution in violation of 18 U.S.C. § 1952 (the "Travel Act").  In order to convict on this charge, the Government must prove (1) that Ms. Neuhausser traveled in or used the facilities of interstate commerce; (2) that she attempted to or did in fact promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of a unlawful activity (in this case, cocaine distribution in violation of 21 U.S.C. § 841); and (3) that she formed a specific intent to do so.  *United States v. Prince*, 529 F.2d 1108, 1112 (6th Cir.), *cert. denied*, 429 U.S. 838 (1976).[10]  In its response brief on appeal, the Government did not address this challenge to the sufficiency of the evidence on the Travel Act conviction.

The indictment cites a particular instance in which Ms. Neuhausser allegedly violated the Travel Act.  Specifically, it alleges that she traveled to Fort Lauderdale, Florida on or around August 7, 1997 in furtherance of a cocaine distribution enterprise.  In support of this allegation, the Government presented the testimony of DEA Agent Charles Stiegelmeyer

---

[10]There is some question as to the continuing viability and precise nature of this last element of specific intent, particularly in cases where a Travel Act charge brought against one conspirator rests upon the interstate travel of a co-conspirator. *See United States v. Betancourt*, 838 F.2d 168, 174 (6th Cir.), *cert. denied*, 486 U.S. 1013 (1988).  However, we need not reach this question under the facts and allegations of this case.

participated in her husband's venture: (1) two occasions in 1997 where Randall Neuhausser was not at home to accept money from Burgess, and where Ms. Neuhausser accepted these payments on her husband's behalf, (*id.* at 453-57); (2) other occasions where Mr. Neuhausser was not at home to accept drug payments from James McCarty, and where Ms. Neuhausser again accepted this money wrapped in brown paper, (*id.* at 142-43); and (3) a 1994 or 1995 incident involving a "strip search" of Burgess, (*id.* at 473-74, 522). Regarding this latter incident, Burgess testified that it arose after one of his friends was arrested, leading the Neuhaussers to fear that Burgess might be an informant. (*Id.* at 472.) Accordingly, both of the Neuhaussers conducted a strip search of Burgess at the pool house on their Bone Road property, to determine whether he was wearing a wire. (*Id.* at 473, 522.) Burgess testified that, during this search, Sheila Neuhausser pointed a gun at him. (*Id.* at 474, 524-25.)

The Government acknowledges that Ms. Neuhausser's mere presence as drug-related transactions occurred would not, standing alone, suffice to sustain her conviction on a charge of conspiracy. However, the Government argues, and we agree, that the evidence of Ms. Neuhausser's active participation, albeit in a limited capacity and only on a few occasions, would permit a reasonable juror to conclude that she was more than merely present as drug business was being conducted. As we have previously explained, "[s]eemingly innocent acts, taken individually, may indicate complicity in conspiracy when viewed collectively and with reference to circumstances in general." *United States v. Ashworth*, 836 F.2d 260, 265 (6th Cir. 1988) (internal quotations and citation omitted). Moreover, while much of the evidence and testimony regarding Ms. Neuhausser's participation is circumstantial, such evidence has been held to be sufficient to sustain a conviction. *See United States v. Stone*, 748 F.2d 361, 362-63 (6th Cir. 1984). Accordingly, we find no basis for overturning the jury verdict on the drug conspiracy count, and we affirm the District Court's denial of Sheila Neuhausser's post-trial motion for acquittal to the extent that

finding on an element of the offense of conviction. Accordingly, notwithstanding her plea, through which she waived her right to a jury trial, Rebmann contended that this element should have been determined under the "beyond a reasonable doubt" standard, and not the less rigorous "preponderance" standard.

We agreed. After first reviewing *Jones*, *supra*, and another recent Supreme Court decision, *Castillo v. United States*, 530 U.S. 120, 120 S. Ct. 2090 (2000), we then turned to *Apprendi*, and concluded that this latter decision "made a radical departure" from the earlier ones. *Rebmann*, 226 F.3d at 524. In particular, where prior cases had looked to legislative intent to distinguish between the elements of an offense and sentencing factors, *Apprendi* adopted a more straightforward approach, considering only whether a fact "increases the maximum penalty for a crime." 226 F.3d at 524 (internal quotations and citation omitted). In the wake of *Apprendi*, we concluded:

> Our duty, in light of this clear dictate from the Court, is to examine whether the sentencing factor in this case was a factual determination, and whether that determination increased the maximum penalty for the crime charged in the indictment. We find that the statute in question here today, 21 U.S.C. § 841, provides for a factual determination of whether the distribution of drugs caused death or serious bodily injury, and that the factual determination significantly impacts the sentence imposed by the court, increasing the maximum penalty from 20 years to that of life imprisonment. We conclude that pursuant to her plea agreement, Rebmann waived her right to a jury trial of the issue of whether her distribution of heroin caused the death. However, we find that Rebmann did not waive the right to have a court decide any remaining elements of the offense beyond a reasonable doubt, as opposed to making those determinations by a mere preponderance of the evidence. Because the provisions at issue are factual determinations

and because they increase the maximum penalty to which Rebmann was exposed, we find that they are elements of the offense which must be proven beyond a reasonable doubt.

*Rebmann*, 226 F.3d at 524-25. Thus, we reversed Rebmann's sentence, and remanded for a factual determination under the more exacting standard of proof.

More recently, in *United States v. Page*, 232 F.3d 536 (6th Cir. 2000), we addressed a situation somewhat similar, though not identical, to the one now before us. The defendants in that case were charged with conspiracy to distribute and to possess with intent to distribute crack cocaine, and some also were charged with substantive counts of distribution of cocaine base. The defendants were convicted on all counts, and, at the subsequent sentencing, the District Court calculated the drug quantities for which each defendant was responsible. On appeal, the defendants argued that their sentences were invalid under *Apprendi*.

We first affirmed that "the principles set forth in *Apprendi* appl[y] to defendants' cases." *Page*, 232 F.3d at 543. In particular, we observed that the "[t]here [was] no mention of [drug] quantity in the indictment and the jury made no findings regarding quantity," but that, "[p]ursuant to the provisions of § 841, the quantity of drugs is a factual determination that significantly impacts the sentence imposed." 232 F.3d at 543. We explained:

Section 841(b)(1)(C) provides for a maximum penalty of 20 years unless the crime involves a quantity of drugs as set forth in subsections (A) or (B). These subsections provide for a maximum penalty of 40 years if the crime involved 5 grams or more of crack cocaine, *see* § 841(b)(1)(B), and a maximum penalty of life imprisonment if the crime involved 50 grams or more of crack cocaine, *see* § 841(b)(1)(A). The district judge found, by a preponderance of the evidence, the quantity

**B. The Jury's Verdict on Sheila Neuhausser's Drug Conspiracy Charge Is Not Against the Weight of the Evidence**.

In her appeal, Sheila Neuhausser first challenges the sufficiency of the evidence as to her convictions on drug conspiracy and interstate travel charges. In reviewing a challenge to the sufficiency of the evidence, we must not "weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999). "Instead, we determine merely whether, after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, a rational trier of fact could find the elements of the crime beyond a reasonable doubt." 177 F.3d at 558.

In arguing that Ms. Neuhausser's drug conspiracy conviction should be sustained, the Government points to two categories of evidence. First, the Government cites testimony that Ms. Neuhausser was present during certain conversations and incidents, including: (1) a January, 1997 meeting at which Doug Burgess and Randall Neuhausser discussed an upcoming trip to California to obtain marijuana, (J.A. at 424-25); (2) various other conversations between Burgess and Mr. Neuhausser regarding their marijuana venture, (*id.* at 458); (3) various times when Burgess would pay money to Mr. Neuhausser for marijuana, (*id.* at 425-26); and (4) certain occasions when Burgess returned from California with marijuana and delivered it to the Neuhaussers' Bone Road residence, (*id.* at 427, 436, 447).

Next, the Government points to a few instances in which, according to witnesses, Ms. Neuhausser more actively

marijuana and a defendant without prior drug convictions. *See* 21 U.S.C. § 841(b)(1)(D). Ms. Neuhausser's 60-month sentence does not exceed this statutory maximum, and therefore is not plainly erroneous.

followed their instructions, and having been given no reason in the record to suspect that they did not, we find that Randall Neuhausser's 30-year sentence does not exceed the statutory maximum for the offense of conviction — namely, conspiracy to distribute and to possess with intent to distribute indeterminate amounts of marijuana and cocaine.[9]

___

the task before it, and that its resulting verdict is susceptible of only one interpretation.

In addition, we recognize that there is dicta in *Randolph, supra,* suggesting that it is the Government's burden to request a special verdict whenever it "seeks [the] imposition of a sentence reflecting culpability for an object of a conspiracy carrying greater than the least grave sentencing consequences." *Randolph,* 230 F.3d at 252. This seemingly broad statement, however, must be read within the context of the facts presented in *Dale* and *Randolph.* In particular, because the general verdicts in both *Dale* and *Randolph* were, in fact, ambiguous, the Government bore the burden of curing this ambiguity in order to attain a sentence in excess of the statutory maximum for the drug producing the least severe penalty. Indeed, in *Randolph,* the defendant expressly identified this ambiguity and sought a special verdict to address it, yet the Government opposed this request. In contrast, the indictment and instructions in the present case unambiguously required jury findings as to *all* objects of the charged multiple-object conspiracy, and no party requested clarifying instructions or a special verdict. Under these circumstances, which were not presented in our earlier decisions, we do not read our precedents as dictating that the Government *still* bears a burden to request a special verdict confirming that the jury did, in fact, follow its unambiguous instructions and make findings as to each object of the conspiracy.

[9] Unlike Randall Neuhausser, who raised the above sentencing issues in his appellate briefs, Sheila Neuhausser only briefly noted these points in a "Notice of Filing of Supplemental Authority," in which she called our attention to the *Apprendi* and *Dale* decisions. Nevertheless, because we have addressed these issues in Mr. Neuhausser's case, we also consider them as they relate to Ms. Neuhausser's sentence.

Upon conducting this inquiry, we find that Ms. Neuhausser's sentence does not implicate the concerns raised by *Apprendi*, *Page*, and *Dale*. Applying these precedents in their broadest form, Ms. Neuhausser's maximum sentence would be 5 years of imprisonment, under the statutory provision governing an undetermined amount of

---

of drugs for which each defendant was accountable. Based on this drug quantity determination, each defendant was sentenced to a term of imprisonment exceeding the 20 year maximum set forth in § 841(b)(1)(C). However, as instructed in *Apprendi*, a defendant may not be exposed to a greater punishment than that authorized by the jury's guilty verdict. The jury merely found that defendants conspired to distribute and possess to distribute some undetermined amount of crack cocaine. As such, defendants cannot be subjected to the higher penalties under § 841(a)(1)(A) or (B). Rather, the maximum sentence that may be imposed on this count is 20 years pursuant to § 841(b)(1)(C).

232 F.3d at 543.[3]

This, however, was not quite the end of the matter. Rather, in *Page*, as here, the defendants failed to object when the District Court initially made its determination of drug quantities. "Where there has been no objection, review is for plain error." 232 F.3d at 543. Accordingly, the panel in *Page* embarked on a case-by-case examination of each defendant's sentence, inquiring whether the *Apprendi*-based sentencing error was prejudicial as to that defendant. For those defendants who had been convicted of both conspiracy and substantive drug offenses, we concluded that there was no prejudice, because the same overall sentence imposed by the District Court could have been achieved by ordering that the sentences for the conspiracy and substantive offenses run consecutively, rather than concurrently. 232 F.3d at 544-45. As for Harvey Page, the sole defendant who was convicted

___

[3] We note that all other circuits that have reached the question have likewise concluded that *Apprendi* applies to the determination of drug quantities under § 841(b)(1). *See, e.g., United States v. Nance*, ___ F.3d ___, 2000 WL 1880629, at *4 (7th Cir. Dec. 29, 2000); *United States v. Hishaw*, ___ F.3d ___, 2000 WL 1862788, at *9 (10th Cir. Dec. 20, 2000); *United States v. Rogers*, 228 F.3d 1318, 1327-28 (11th Cir. 2000); *United States v. Nordby*, 225 F.3d 1053, 1058-59 (9th Cir. 2000).

only of conspiracy, we found a plain sentencing error, and we vacated his sentence and remanded for resentencing. 232 F.3d at 545.[4]

In light of these recent decisions, our path is almost, but not quite, clear. Randall Neuhausser, like Harvey Page, was convicted only of conspiracy under 21 U.S.C. § 846, with maximum penalties determined by reference to 21 U.S.C. § 841(b)(1). The indictment here, like the one in *Page*, failed to specify drug quantities, and the jury was not instructed to determine quantities beyond a reasonable doubt. The remaining question, then, is whether the sentence imposed by the District Court can be sustained on the jury verdict alone, without resort to additional facts, such as drug quantities, that were determined at sentencing under the "preponderance" standard. We now turn to this issue.

### 2.  The Effect of Our Decision in *Dale*

Notwithstanding *Apprendi* and its progeny, the Government asserts that Randall Neuhausser's sentence is fully sustainable under the factual findings inherent in the jury verdict, at least when combined with Mr. Neuhausser's record of prior convictions. Specifically, the Government points to 21 U.S.C. § 841(b)(1)(C), which establishes a 30-year maximum term of imprisonment for defendants who commit certain drug offenses, including those involving cocaine, and who have "a prior conviction for a felony drug offense." In this case, Randall Neuhausser had such a prior conviction, and the Government filed the requisite notice of its intention to seek this enhancement. As expressly recognized in *Apprendi*, the fact of a prior conviction remains within the province of the court to determine, and need not be submitted to a jury. *See Apprendi*, 120 S. Ct. at 2362-63; *see also United States v. Gatewood*, 230 F.3d 186, 192 (6th Cir. 2000) (en banc).

---

[4] In a footnote, we rejected the Government's appeal to harmless error analysis, explaining cursorily that the defendants had challenged only their sentences, and not their convictions. 232 F.3d at 544 n.4.

that "the indictment was an 'and,' not an 'or,' indictment," so that "[t]he jury did not need to decide between the different drugs." *Watts*, 950 F.2d at 515; *see also United States v. Banks*, 78 F.3d 1190, 1203 (7th Cir.) (following *Watts* where the "indictment was phrased in the conjunctive," and where "the court's instructions to the jury reiterated the conjunctive nature of the indictment"), *vacated and remanded on other grounds*, 519 U.S. 990 (1996).[7] *But see Newman v. United States*, 817 F.2d 635, 638 (10th Cir. 1987) (declining to accord such significance to an indictment which "conjunctively include[s] all the potential illegal objectives of the conspiracy"). Thus, where the evidence as to drug types was "not contradicted or unclear," the Eighth Circuit affirmed the defendants' sentences, finding that the trial court "did not elicit an ambiguous or unclear verdict from the jury." *Watts*, 950 F.2d at 515.

We find that the same holds true here. Indeed, in contrast to the one varying reference in the jury instructions in *Green*, the indictment and instructions in the present case uniformly and consistently directed the jury to consider whether Randall Neuhausser had conspired to distribute both marijuana *and* cocaine, and to return a guilty verdict only if the jurors unanimously agreed beyond a reasonable doubt that he had done so.[8] Assuming, as we must, that the jurors carefully

---

[7] This Court previously has elected to follow *Banks* and the cases on which it relied, albeit in an unpublished decision. *See United States v. Carter*, 91 F.3d 144, 1996 WL 397423, at *2 (6th Cir. July 15, 1996) ("Where a multiple-object conspiracy charge uses the conjunctive in listing the substantive offenses that were the objects of the conspiracy, it is normally held that a general verdict of 'guilty' relates to all of the substantive offenses listed.").

[8] While we hold that there was no ambiguity in the indictment, instructions, or general verdict in this case, we do not wish to discourage the Government or the trial court from using separate counts, special verdict forms, or more specific instructions in future cases involving multiple-object conspiracies. Plainly, it is appropriate to take any reasonable steps which might ensure that the jury properly understands

180 F.3d at 226. The Court explained that an earlier decision finding an ambiguous verdict, *United States v. Cooper*, 966 F.2d 936 (5th Cir. 1992), was not inconsistent with this rule, because that case — like our *Dale* decision — involved an instruction that the jury "could convict for conspiracy if the Government proved an agreement to distribute only one of the controlled substances alleged in the indictment and that, if so, it must agree unanimously as to which controlled substance was distributed." *Green*, 180 F.3d at 225.

Turning to the case before it, the Fifth Circuit concluded that the jury verdict was not ambiguous. The Court first noted that the indictment charged a conspiracy to distribute both cocaine and preludes. Next, in the five instances where the jury instructions mentioned these substances, four references were to cocaine "and" preludes. The Fifth Circuit was not troubled by the one reference that was phrased differently, explaining that "[a]ny chance of ambiguity arising from the one instance in the instructions where a comma, rather than a conjunction, separated 'cocaine' from 'phenmetrazine or preludes' was removed by the phrase that immediately followed — 'as charged in the indictment.'" 180 F.3d at 226. Finally, the Court noted the "overwhelming" evidence that "the conspiracy, charged and proved, had as its objective the distribution of cocaine and preludes." 180 F.3d at 226. In light of all this, the Court was "more than confident that the jury was convinced beyond a reasonable doubt that both cocaine and preludes were involved." 180 F.3d at 227.

Similarly, in *United States v. Watts*, 950 F.2d 508 (8th Cir. 1991), *cert. denied*, 503 U.S. 911 (1992), the Eighth Circuit distinguished a prior decision in which it had held that, where the "evidence at trial is not clear as to which of two alternative drugs were involved in a multi-drug conspiracy," the trial court should either use a special verdict form or sentence in accordance with the drug which "yields the most favorable sentencing result for the defendants." *Watts*, 950 F.2d at 515 (construing *United States v. Owens*, 904 F.2d 411 (8th Cir. 1990)). In *Watts*, by contrast, the Court reasoned

Because Mr. Neuhausser was sentenced to a 30-year term of imprisonment, the Government contends that his sentence lies within the statutory boundaries of § 841(b), and thus may be upheld even without a jury determination of drug quantities.

As Mr. Neuhausser points out, the Government's argument implicates our decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), which somewhat presaged the ruling in *Apprendi*. In *Dale*, as here, the defendant was charged and convicted on a single count of conspiracy to distribute both cocaine (in that case, cocaine base) and marijuana. In light of the drug types and quantities involved, defendant Jeffrey Dale faced either a 5-year statutory maximum prison term for conspiracy to distribute marijuana, *see* 21 U.S.C. § 841(b)(1)(D), or a 40-year maximum for conspiracy to distribute crack cocaine, *see* 21 U.S.C. § 841(b)(1)(B). He was sentenced under the guidelines for crack cocaine, resulting in a 295-month (24 years and 7 months) term of imprisonment.

On appeal, Dale argued that the single count of conspiracy charged in the indictment was unlawfully duplicitous, as it effectively charged him with two offenses — conspiracy to distribute marijuana and conspiracy to distribute cocaine base — and permitted the jury to convict him of either offense. We agreed in part with Dale's premise, but not with his conclusion, observing that "[a] single conspiracy may have as its objective the distribution of two different drugs without rendering it duplicitous." *Dale*, 178 F.3d at 431. Because "conspiracy is itself the crime," we held that Dale's conviction could be sustained so long as the evidence permitted the jury to find that he had agreed with others to commit at least one of the underlying drug offenses, involving either marijuana or cocaine. 178 F.3d at 431-32.

Nevertheless, though we affirmed Dale's conviction, we found that he had raised a question as to the validity of his sentence. We first noted that the jury had been given an "enhanced unanimity" instruction, under which "it would

have to unanimously agree as to which controlled substance, or both, the defendants conspired to distribute in order to return a guilty verdict." 178 F.3d at 431. However, in light of the jury's general verdict, it was not possible to say whether Dale had been found guilty of conspiracy to distribute crack, marijuana, or both. We then surveyed analogous decisions from other circuits:

> Seven of the eight circuits that have directly considered this issue have decided that the punishment imposed cannot exceed the shortest maximum penalty authorized in the statutes criminalizing the multiple objects if the punishment authorized by the conspiracy statute depends on the punishment provided for the substantive offenses which were the objects of the conspiracy. That is the case here. The maximum sentence for conspiring to distribute a controlled substance depends on the controlled substance to be distributed. 21 U.S.C. § 846. Given the facts in this case, the maximum sentence for a conspiracy to distribute marijuana is five years, 21 U.S.C. § 841(b)(1)(D), while a conspiracy to distribute crack would yield a forty-year maximum sentence, 21 U.S.C. § 841(b)(1)(B).

> Five courts of appeals have held that when the jury returns a general verdict to a charge that a conspiratorial agreement covered multiple drugs, the defendant must be sentenced as if he distributed only the drug carrying the lower penalty.

178 F.3d at 432 (footnotes omitted). We elected to follow this weight of authority, particularly where the Supreme Court's reasoning on a related issue in *Edwards v. United States*, 523 U.S. 511, 118 S. Ct. 1475 (1998), tended to suggest the same outcome. *See Dale*, 178 F.3d at 433. Thus, we concluded that "the shorter maximum sentence should be used if the verdict is merely general, rather than specific, and

Under these circumstances, we conclude that *Dale* is not controlling here, and that Mr. Neuhausser's sentence need not be limited to the maximum allowable for an indeterminate amount of marijuana. *Dale* governs in cases where a jury's general verdict is ambiguous, such that it cannot be determined whether the jurors unanimously agreed as to one or another of the multiple drugs allegedly involved in a conspiracy. There is no such ambiguity here, where any disagreement among the jurors as to whether Mr. Neuhausser conspired to distribute both marijuana and cocaine, only one or the other, or neither would have precluded a unanimous verdict of guilty on Count One of the indictment.

At least two other circuits have drawn this same distinction in drug conspiracy cases between ambiguous verdicts and verdicts that reflect jury findings as to each object of a multiple-object conspiracy. First, in *United States v. Green*, 180 F.3d 216 (5th Cir.), *cert. denied*, 528 U.S. 1054 (1999), the Fifth Circuit addressed a case in which the indictment charged a conspiracy to distribute cocaine and phenmetrazine (or preludes), and the jury returned a general verdict of guilty on this count. The district court concluded that the jury verdict was ambiguous, and sentenced defendant Paul Richard Green to the 5-year statutory maximum for preludes, rather than the 10-year mandatory minimum for cocaine.

The Fifth Circuit reversed, holding that "it was error to limit Green's sentence to the statutory maximum for preludes." 180 F.3d at 227. At the outset of its analysis, the Court observed that "for a conspiracy with more than one object-offense, a sentence set by statute for one of those offenses should not be imposed if the jury did not find the defendant guilty of that object-offense." 180 F.3d at 225. Yet, the Court rejected the broad proposition that "a general verdict for a conspiracy with more than one object-offense is 'ambiguous' ipso facto." 180 F.3d at 225. Rather, "even where there is a conspiracy general verdict, the sentencing court can still conclude that the jury found, beyond a reasonable doubt, guilt for more than just one object-offense."

(3)  That defendants joined in the agreement willfully, that is, with the intent to further its unlawful purpose.

* * * *

The defendants have been charged with the single conspiracy to distribute and to possess with the intent to distribute marijuana ***and*** cocaine.  Agreement is the primary element of a conspiracy . . . .

(J.A. at 72-74 (emphasis added).)

Further, the jury instructions referred to and incorporated "an indictment attached as Appendix A," (J.A. at 72), which likewise charged Randall Neuhausser and his co-defendants with conspiring to "distribute and to possess with intent to distribute, marijuana ***and*** cocaine," (J.A. at 87 (emphasis added).) No "enhanced unanimity" instruction was given, nor was the jury specially instructed as to how it should consider a conspiracy involving two controlled substances.

We have often stated our presumption that jurors follow their instructions.  *See, e.g.*, *Washington v. Hofbauer*, 228 F.3d 689, 706 (6th Cir. 2000); *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000); *United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995), *cert. denied*, 516 U.S. 1180 (1996).  In this case, the indictment charged the defendants with conspiring to distribute both marijuana *and* cocaine, and the jury was repeatedly and consistently instructed in accordance with this charge.  Mr. Neuhausser did not request any sort of clarifying or "enhanced unanimity" instruction or special verdict form, and, significantly, he does not now contend that his conviction should be set aside as possibly resting upon less-than-unanimous findings as to one controlled substance or the other.  Moreover, the jury was presented with ample evidence from which it could have found that the conspiracy involved both marijuana and cocaine.

the one drug allows for a sentence above the maximum for another charged drug."  178 F.3d at 433.[5]

At first blush, it appears that Randall Neuhausser's sentence in this case presents this same dilemma.  If his conspiracy offense involved cocaine and the quantity were deemed indeterminate, he would be subject to a 30-year statutory maximum prison term in light of his prior drug conviction, *see* 21 U.S.C. § 841(b)(1)(C), and his 30-year sentence would not rise to the level of plain error.  If, on the other hand, his conspiracy conviction rested solely upon an unknown amount of marijuana, and not cocaine, his sentence

---

[5]In addition, shortly before oral argument in this case, another panel discussed and followed *Dale* in *United States v. Randolph*, 230 F.3d 243, 252 (6th Cir. 2000).  *Randolph* involved a two-count indictment, one charging the defendants with conspiring to distribute a Schedule I narcotic, and the other accusing them of conspiracy to distribute a Schedule II substance.  One of the defendants, Cedric Johnson, requested a special verdict form expressly instructing the jury to determine whether he was guilty of conspiring to distribute cocaine, a Schedule I drug, or marijuana, a Schedule II substance.  The District Court refused, stating that there was only one conspiracy encompassing both drugs.  The jury returned a guilty verdict, and Johnson was sentenced in excess of the 60-month maximum for a marijuana-only conspiracy.

We reversed and remanded with instructions that Johnson be sentenced only for the marijuana conspiracy.  We explained that the case differed from *Dale*, but nonetheless was controlled by it:

Johnson's situation differs from Dale's, of course, in that Johnson's counsel explicitly requested a special verdict on the question whether Johnson had conspired to distribute marijuana, cocaine, or both.  Here, the trial judge and the government were on notice that Johnson wished to have the opportunity to convince a jury that his participation in the conspiracy related only to marijuana.  By denying Johnson's request, the trial court effectively denied Johnson access to the jury with respect to this important question of fact.

*Randolph*, 230 F.3d at 252.  Because this denial resulted in a sentence in excess of the statutory maximum for a marijuana-only conspiracy, we found that *Dale* required that this sentence be vacated.  230 F.3d at 252.

would be limited to a 10-year maximum in light of his prior conviction. *See* 21 U.S.C. § 841(b)(1)(D). Given the general jury verdict here, *Dale* seems to require the latter result.

Yet, there is one important — and, we conclude, dispositive — distinction between this case and *Dale*. In *Dale*, we recognized that the trial court's "enhanced unanimity" instruction required the jury "to unanimously agree *as to which controlled substance, or both*, the defendants conspired to distribute in order to return a guilty verdict on the multiple-object conspiracy." *Dale*, 178 F.3d at 431 (emphasis added). Under those circumstances, the general guilty verdict told us only that the jurors *had* reached a unanimous agreement on this issue, but did *not* disclose the specific ground — *i.e.*, crack, marijuana, or both — upon which the jurors had agreed. Thus, it would have been improper to impose a sentence based on a conspiracy to distribute crack, when it was possible that the jury had found a conspiracy to distribute only marijuana, and not crack.[6]

In contrast, the jury here was instructed as follows:

Intent to Distribute and Distribution of Marijuana *and* Cocaine

Count One charges that the defendants did, knowingly and intentionally, unlawfully combine, conspire, confederate, and agree with each other and other persons to possess with intent to distribute and to distribute marijuana *and* cocaine, Schedule I and II Controlled Substances, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 . . . .

---

[6] Similarly, in *Randolph*, *supra*, the trial court's failure to use the special verdict form requested by defendant Jackson precluded any determination whether the jury had found Jackson guilty of conspiring to distribute marijuana, cocaine, or both.

Title 21 U.S.C. § 841(a)(1) makes it a crime for anyone to knowingly or intentionally possess a controlled substance with intent to distribute it.

Marijuana *and* cocaine are controlled substances within the meaning of the law.

For you to find the defendants guilty of violating 21 U.S.C. § 841(a)(1), you must be convinced that the government has proved beyond a reasonable doubt:

(1)  That defendants knowingly possessed controlled substances;

(2)  That the substances were in fact marijuana *and* cocaine; and

(3)  That defendants possessed the substances with the intent to distribute them.

\* \* \* \*

Conspiring to Distribute Marijuana *and* Cocaine

Count One also charges that the defendants violated Title 21 U.S.C. § 846, which makes it a crime for anyone to conspire with someone else to commit a violation of certain controlled substances laws of the United States.

\* \* \* \*

For you to find the defendants guilty of violating 21 U.S.C. § 846, you must be convinced that the government has proved beyond a reasonable doubt:

(1)  That two or more persons, directly or indirectly, reached an agreement to possess with intent to distribute marijuana *and* cocaine;

(2)  That defendants knew of the unlawful purpose of the agreement; and