**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert L. HICKS, Defendant–Appellant.**

No. 00–5818.

United States Court of Appeals, Sixth Circuit.

Oct. 18, 2001.

Before KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Defendant, Robert L. Hicks, appeals from the judgment of conviction and sentence entered by the district court on June 8, 2000, following Defendant's guilty plea conviction for one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, for which Defendant was sentenced to 188 months' imprisonment.

On appeal, Defendant raises a single issue claiming that the district court erred in calculating the amount of drugs attributable to Defendant for purposes of determining his base offense level. This is the second time that Defendant's case has been before this Court on a sentencing issue. Defendant had previously been sentenced to 235 months' imprisonment for his guilty plea conviction; he appealed to this Court claiming, among other things, that the district court erred in calculating the amount of cocaine attributable to Defendant; this Court agreed with Defendant and remanded the case to the district court for resentencing, "with instructions to 'err on the side of caution.'" *See United States v. Hicks,* No. 98–5382, 1999 WL

1073672, at *5 (6th Cir. Nov. 15, 1999) (unpublished).

For the reasons set forth below, we now **AFFIRM** Defendant's sentence.

## STATEMENT OF FACTS

### Procedural History

Defendant was named in an indictment filed on March 20, 1997, charging Defendant with conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846, in Count I; possession with intent to distribute cocaine in violation of 21 U.S.C. § 846, 18 U.S.C. § 2, in Count II; and carrying of a firearm during and in relation to the commission of a drug trafficking offense in violation of 18 U.S.C. 924(c), in Count III.

Defendant pleaded guilty to Count I of the indictment, and was sentenced to 235 months' imprisonment on March 11, 1998. Defendant filed a timely notice of appeal challenging his sentence on various grounds. A two-member majority of this Court affirmed in part, reversed in part, and remanded the case for resentencing on the issue of the quantity of drugs attributable to Defendant. *See Hicks,* 1999 WL 1073672, at **5. Specifically, this Court held that

> [t]he only amount of cocaine that can be attributable to Hicks with any sense of reliability is that amount based upon Hick's admission that he was paid between $5000 and $6000 and given the opportunity to "work" two to three kilograms of cocaine. Thus, the amount of cocaine that should be attributed to Hicks is two to three kilograms plus a fair amount that would reflect Hick's negotiated delivery fee of between $5,000 and $6000.

*Id.* Accordingly, the issue on remand to the sentencing court was the amount of drugs for which Hicks was paid $5000 to $6000 to deliver.

On April 14, 2000, upon remand from this Court, the district court began the resentencing hearing, and at the conclusion of proofs, the court ordered the parties to submit proposed findings of fact and conclusions of law. On June 5, 2000, the resentencing hearing resumed; the court found the amount of drugs attributable to Defendant for sentencing purposes was 20 to 30 kilograms of cocaine, and sentenced Defendant to a term of 188 months' imprisonment to be followed by 5 years of supervised release. (J.A. at 47, 58–60.) Defendant filed this timely appeal, once again challenging the district court's computation of drugs attributable to Defendant for purposes of calculating his base offense level.

### Facts

We shall rely upon the facts as set forth in this Court's previous opinion, *see Hicks,* No. 98–5382, 1999 WL 1073672, at *1–*2, while adding the sentencing findings of fact and conclusions of law as stated at the June 5, 2000 sentencing hearing. Specifically, the sentencing court opined:

> At the guilty plea hearing Mr. Hicks testified that he was picking up the cocaine for Marcus Trimble. He also testified that the was told by Trimble that he would be paid [up] to $6,000 for picking up the cocaine and that Trimble would probably let him, quote, work, close quote, two to three kilograms of cocaine, which the defendant could sell. That is, as additional compensation over and above the five to $6,000 he would derive personally, the profit from the two to three kilograms that he was allowed to work. That is, deliver or sell on his own account.
>
> He also testified that he had told Ms. Toran that Trimble would take her to pick up the van, and Toran had been paid for previous work of this sort, be-

tween a thousand and $15,000 by Mr. Hicks in the past when she had helped him pick up drugs on other occasions, and that she hoped to receive at least a thousand dollars for helping her pick up the van on this occasion.

Now coming to the crux of the task before the court, the court heard the testimony, as I spoke about earlier, from Mr. Thomas Patrick Young. Young has been convicted, he entered a plea of guilty to drug charges, he was sentenced by Judge Nixon to 15 years, he had a plea agreement to cooperate, and the government has filed a motion to reduce his sentence.

He had an earlier conviction, as I recall, in the state courts, in the early eighties, and was sentenced to—cold have gotten eight year, but received only one year on that state court conviction.

After his conviction in the state court, it didn't serve as any deterrence. One he was released, he got back into the drug business. Once he was released, he got back into the drug business.

Young testified that in 1981 that he started selling drugs for Hicks and it involved at the beginning about a quarter kilogram. That changed over time and became more. In about 1992 or 1993 Young began selling cocaine for Marcus Trimble. Trimble initially brought the cocaine back to Young, but Young later had to pick up the cocaine designated by Trimble. After Young picked up the cocaine, he split it between himself and Mr. Hicks. Trimble would let Hicks and Young know of the delivery of a shipment of cocaine a day or two before it arrived. During the period from 1996 through 1997 the typical amount that Young picked up and split with the defendant was 20 to 30 kilograms. He [Young] testified that in January of '97—that in 1996 to January of '97 on one occasion he picked up as much as a hundred kilograms, but the usual pick-up was 20 kilograms, but even that varied from time to time.

In the period of 1996 and 1997, the lowest was 20 kilograms, and he put the normal pick up at 20 to 30 kilos. If the load were an even number, such as 20 or 40 kilograms, the kilos would be split evenly between Young and Hicks, per Trimble's direction. But if the amount of cocaine was an odd number, such as 25 to 35 kilograms, Young testified that he got to keep the odd number. And after selling the cocaine, Young would on occasion be given money by Hicks which he, in turn, would deliver to the person who had delivered the cocaine to Nashville, Tennessee.

January of 1997 Young was apprehended with $240,000 at a hotel where was taken into custody. After that point his testimony was to the effect that Marcus Trimble did not call on him to pick up cocaine.

He [Young] also testified that on the date the defendant was arrested in this case that he had a conversation with another man known to this court, whose case was handled before this court, by the name of Eric Johnson, who was associated with Young and Hicks, and who was also involved in drug trafficking. On that occasion Johnson, according to Young, told him that he had spoken with and seen Hicks and that Hicks and Trimble would not deal with Young because he had been caught with the money; that is, the $240,000, which had been seized from Young. The very next day Johnson told Young that Hicks had been caught the day before picking up drugs and [sic] Trimble had sent Hicks to get.

The court credits this testimony of Mr. Young having observed his appearance and demeanor. His testimony was direct, forthright and convincing, and I accept it and credit it as such.

And in determining what quantity of drugs is attributable to a particular defendant, the court must consider those quantities that are directly attributable to the defendant, those quantities that are part of the same course or common scheme or plan, as well as those quantities which are attributable to a reasonably foreseeable act of others in furtherance of the jointly undertaken criminal activity.

The burden is on the government to establish the quantity of drugs attributable to a defendant by a preponderance of the evidence. The evidence must have sufficient indicia of reliability to support its probable accuracy. However, the court also believes that an approximation of the quantity of drugs is completely appropriate. However, where the quantity of drugs is uncertain, the District Court should, as it's been instructed in this case by the Sixth Circuit in the opinion in this case, to err on the side of caution and only hold a defendant responsible for that drug quantity for which he or she is more likely than not responsible.

As I have said before, the court credits the testimony of Thomas Patrick Young. In 1996 and 1997 Young was picking up shipments of cocaine at the direction of Trimble, the same person who the defendant stated sent him to pick up the cocaine in this case. The least amount received was 20 kilograms, and the normal shipments were in the range of 20 to 30 kilograms. And, as I stated before, the shipments were generally split between the defendant Young at the direction of Trimble and the defendant was aware that Young was picking up the shipments at the direction of Trimble.

And when Trimble ceased using Young after Young was apprehended by law enforcement officers, the proof in this case supports the reasonable infer-ence that Defendant Hicks took over the role of Young on behalf of Trimble as the person designated to pick up the cocaine.

Accordingly, the court finds that the government has established by a preponderance of the evidence, preponderance of reliable evidence, that I have previously outlined, that the quantity of cocaine attributable to the defendant is 20 to 30 kilograms, and that such quantity was reasonably foreseeable to the defendant as a part of his jointly undertaken criminal activity.

The foregoing constitutes the court's findings of fact and conclusions of law with regard to the fact finding that was made on resentencing.

Accordingly, the court finds the cocaine attributable to the defendant is 20 to 30 kilograms, and the guideline offense level is 35, and his criminal history category is roman numeral two, yielding a revised guideline range of 188 to 235 months.

(J.A. at 199–204.)

Defendant was sentenced at the low end of the guideline range to 188 months' imprisonment and this timely appeal ensued.

## DISCUSSION

A sentencing court's calculation of the quantity of drugs for which the defendant is attributable is reviewed for clear error. *See United States v. Owusu,* 199 F.3d 329, 338 (6th Cir.2000) (citing *United States v. Berry,* 90 F.3d 148, 152 (6th Cir.1996)).

In *Owusu,* this Court succinctly stated the law associated with a sentencing court's calculation of the amount of drugs attributable to a defendant as follows:

A sentencing court may hold a defendant accountable for a specific amount of drugs only if the defendant is more likely than not responsible for a quantity

greater than or equal to that amount. If the exact amount of drugs involved is uncertain, the court may make an estimate supported by competent evidence in the record. The evidence must have a minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate. Testimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable. We defer to a district court's credibility determinations unless they have no foundation.

*Owusu*, 199 F.3d at 338–39 (citations and internal quotation marks omitted).

Here, Defendant claims that the sentencing court erred in attributing 20 to 30 kilograms of cocaine to Defendant. According to Defendant, the sentencing court ignored this Court's instruction to "err on the side of caution" in sentencing Defendant inasmuch as the court erroneously imputed the amount of cocaine for which Defendant's coconspirator Young would have been responsible to Defendant without any basis for doing so. Defendant argues that Young was privy to much more information than was Defendant, and Defendant therefore cannot be held accountable for the amount of drugs with which Young may dealt. We disagree.

At Defendant's sentencing hearing Thomas Patrick Young testified that he began selling drugs for Defendant in 1991. Young did not testify at Defendant's initial sentencing hearing inasmuch as Young was incarcerated at the time. As found by the district court, Young testified that upon his release from state court, he began selling cocaine for Defendant and that the amount initially was about a "quarter key." Subsequently, Young met Marcus Trimble and began selling cocaine for Trimble in 1992 or 1993. Young testified that at first Trimble would provide the cocaine to him, but that after awhile Trimble instructed Young to pick the cocaine up at a hotel and then deliver the cocaine to Defendant. Upon doing so, however, Young would split the amount between Defendant and himself as instructed by Trimble. Specifically, if the amount were an even number of kilograms, Trimble instructed Young to split the amount evenly with Defendant; however, if the amount were an odd number of kilograms, say 25 kilograms, Trimble instructed Young to keep the odd number for himself—i.e., 15 kilograms, and give the remaining even number of kilograms, 10 kilograms, to Defendant.

Young further testified that in 1996 to January of 1997, he was picking up cocaine for Trimble and splitting it with Defendant in the process described above. Young testified that during this time frame, he picked up "anywhere from 20 to a hundred keys" of cocaine at a time; however, he only remembered picking up 100 kilograms on one occasion. (J.A. at 291, 293.) On the occasion when Young picked up 100 kilograms, he split the amount evenly with Defendant, thereby providing Defendant with 50 kilograms of cocaine. Young stated that the typical amount of cocaine that he picked up at Trimble's instruction and then split with Defendant was between 20 to 30 kilograms. After Defendant sold the cocaine that was provided to him by Young, Young would retrieve the proceeds from Defendant and then deliver the proceeds to the various drivers back at the hotel pick up point.

Young went on to testify that in January of 1997, approximately $240,000 that he had recovered on Trimble's behalf was confiscated by the police, and that after that incident Trimble no longer used Young as a mule. Young stated that he heard from "an associate" named Eric Johnson that Defendant performed

Young's duties in connection with the drug enterprise after Trimble no longer used Young's services.

Based upon Young's testimony, the district court's findings of fact and conclusion of law were not clearly erroneous. The district court credited Young's testimony as credible, and based upon Young's knowledge of and participation in the enterprise, the court's credibility determination was not without foundation. *See Owusu*, 199 F.3d at 339. This being the case, Young's testimony that he had been a mule for Trimble during 1996 to January of 1997 during which time he picked up and shared, usually in equal portions, anywhere from 20 to 100 kilograms of cocaine with Defendant—with the typical amount split being anywhere from 20 to 30 kilograms—supports the district court's conclusion that Defendant was responsible for 20 to 30 kilograms of cocaine. *See id.* at 338 (noting that "[i]f the exact amount of drugs involved is uncertain, the court may make an estimate supported by competent evidence in the record"). And as indicated, the evidence bears the requisite indicia of minimal reliability based upon Young's knowledge of and participation in the drug enterprise. *See id.* Indeed, Young himself was subsequently arrested for his criminal acts, and approximately one quarter of a million dollars had been seized by the government from Young as drug proceeds.

We are not persuaded by Defendant's claim that the district court improperly imputed Young's acts in connection with the drug conspiracy to Defendant. It is well settled that testimony from a coconspirator may be used to determine the amount of drugs attributable to a defendant. *See Owusu*, 199 F.3d at 339; *United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir.1998). Young testified that Defendant later assumed Young's role in the criminal enterprise, and because the amount of co-caine that had normally been involved in each shipment was between 20 to 30 kilograms of cocaine, it is therefore reasonably foreseeable that Defendant was being paid the $5000 to $6000 dollars—the act at issue on appeal—to pick up and deliver 20 to 30 kilograms of cocaine. *See Owusu*, 199 F.3d at 338 (noting that a sentencing court may hold a defendant responsible for a specific quantity of drugs if it is more likely than not that the defendant was responsible for a quantity greater than or equal to that amount); *United States v. Neuhausser*, 241 F.3d 460, 475 (6th Cir. 2001) ("Regarding the drug quantities, we have observed ... that a defendant convicted of conspiracy may be charged with all reasonably foreseeable acts and omissions of co-conspirators in furtherance of the conspiracy."). Finally, because there was testimony that Young and evenly split 100 kilograms with Defendant on at least one occasion, the district court in fact "err[ed] on the side of caution" when attributing 20 to 30 kilograms of cocaine to Defendant. *See United States v. Milledge*, 109 F.3d 312, 316 (6th Cir.1997); *Hicks*, 1999 WL 1073672, at *2.

## CONCLUSION

For the above-stated reasons, the district court did not err when determining the amount of drugs attributable to Defendant for purposes of calculating Defendant's base offense level, and Defendant's sentence is therefore **AFFIRMED.**